**SHANKS et al. v. BANTING MFG. CO. et. al.**

(District Court, N. D. Ohio, W. D. November 12, 1925.)

No. 516.

1. **Courts ⬤═▷282(1), 284—When federal court has jurisdiction without diversity of citizenship stated.**

Under Judicial Code, § 24 (Comp. St. § 991), diversity of citizenship is not essential to jurisdiction of federal court, where matter in controversy, exclusive of interest and costs, exceeds $3,000, and arises under Constitution or laws of United States.

2. **Evidence ⬤═▷29—Federal court takes judicial cognizance of laws of state within which its territorial jurisdiction lies.**

Federal court takes judicial cognizance of laws of state within which its territorial jurisdiction lies.

3. **Courts ⬤═▷282(3)—District Court had no jurisdiction of suit to enjoin levy of execution on judgment of state court rendered in violation of due process clause, when also violative of state Constitutions and statutes.**

Suit to enjoin execution on judgment of Ohio court, rendered without personal service as in violation of Fourteenth Amendment, was not one arising under Constitution or laws of United States so as to be within federal court's jurisdiction, in absence of diverse citizenship, where judgment violated Gen. Code Ohio, §§ 11575, 11576 (3), 11580, 11631, and Const. Ohio, art. 1, § 16.

4. **Courts ⬤═▷490—Policy of federal courts not to extend federal jurisdiction over matters equally cognizable by state tribunals.**

It is policy of federal courts not to extend federal jurisdiction over matters equally cognizable by state tribunals, unless elements of that jurisdiction are so clearly present that principle of comity has no place.

In Equity. Suit by H. A. Shanks and others against the Banting Manufacturing Company and others. The complaint was dismissed, and plaintiffs moved for rehearing. Motion denied.

George W. Ritter and Fritsche, Kruse & Winchester, all of Toledo, Ohio, for plaintiffs.

Mulholland & Hartmann, of Toledo, Ohio, and Clarence U. Ahl, of Bucyrus, Ohio, for defendants.

KILLITS, District Judge. The complainants in this case were guarantors on a promissory note in the sum of $4,500. The note contained the customary cognovit clause, authorizing and empowering any attorney to appear without process and confess judgment, etc., in any court of record. The guaranty which complainants signed, provided, among other things, for a waiver of presentment, demand, protest, etc., for the insurance of the payment of the principal and interest of the note when the same should become due, "and of any extension thereof, in whole or in part, accepting all its provisions, and authorizing the maker without notice to me to obtain such an extension." It also provided in case of default that the guarantors might be joined by the holder in an action upon the note. Such

action on this note was instituted in the court of common pleas of Crawford county, and judgment against the maker and these complainants was taken without an attempt at process; no defendant to such suit appearing. An execution was taken out, directed to the sheriff of Lucas county, Ohio. The object of this action is to enjoin the sheriff, defendant herein, from levying such execution upon the property of the complainant guarantors. All parties to this case are residents of this district and division.

The sole ground of jurisdiction here is predicated upon the due process of law amendment to the federal Constitution. In a memorandum heretofore filed herein, we directed a dismissal of the complaint for want of jurisdiction, and also because, in our judgment, the complainants had available a remedy at law.

The Code of Ohio provides for relief by motion addressed to the adjudicating court, whether during or subsequent to the term at which a money judgment is rendered without jurisdiction of the alleged debtor; reference being had to sections 11575, 11576(3), 11580, and 11631, of the General Code of Ohio, and section 16, art. 1, Constitution of Ohio.

[1] We are now considering a motion for a rehearing; and we are asked to regard, as the controlling federal statute, this much of section 24 of the Judicial Code (Comp. St. § 991): "The District Courts shall have original jurisdiction * * * of all suits * * * where the matter * * * exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States. * * * *" When such a situation is present, diversity of citizenship is not essential to jurisdiction.

In Defiance Water Co. v. Defiance, 191 U. S. 194, 24 S. Ct. 67, 48 L. Ed. 140, the Supreme Court observed: "The presumption is in all cases that the state courts will do what the Constitution and laws of the United States require." A corrective in this behalf is afforded by section 237 of the Judicial Code (Comp. St. § 1214). Three cases which are cited in a brief in support of the motion for a rehearing we consider not controlling, because they arise under this section (237) of the Judicial Code, and not under section 24. A consideration of the adjudications under the Fourteenth Amendment will show that the vast majority of cases before the Supreme Court came there by virtue of the provisions of section 237. None of them are of any consequence

in the determination of the jurisdictional question here. What we are now concerned with is whether a real federal question, presentable to this court, is shown in the complaint. In passing upon this subject, it is noted that the Supreme Court, in affirming this court in Cuyahoga River Power Co. v. Northern Ohio Traction Co., 252 U. S. 388, 397, 40 S. Ct. 404, 408 (64 L. Ed. 626), said that the "federal question" which is entertainable because of the provision above quoted from section 24 of the General Code is one which is such "not in mere form but in substance, and not in mere assertion, but in essence and effect."

The courts have given much attention to the effect of the language above quoted from section 24. A summary of the current of authorities seems to be that a suit, to be said to arise under the Constitution or laws of the United States, within the meaning of this part of the section in question, must be one which, seen from the record, really and substantially involves a controversy as to the effect or construction of the Constitution or laws, upon the determination of which the result depends.

In Starin v. New York, 115 U. S. 248, 257, 6 S. Ct. 28, 31 (29 L. Ed. 388), this language is used: "The character of a case is determined by the questions involved. Osborn v. Bank of United States, 9 Wheat. 737 [738], 824 [6 L. Ed. 204]. If from the questions it appears that some title, right, privilege, or immunity, on which the recovery depends, will be defeated by one construction of the Constitution or a law of the United States, or sustained by the opposite construction, the case will be one arising under the Constitution or laws of the United States, within the meaning of that term as used in the act of 1875; otherwise not. [Italics ours]. Such is the effect of the decisions on this subject."

According to the complaint the contravention of the Fourteenth Amendment laid in the rendering of judgment by the state common pleas court against the complainants without requiring personal service upon them. Assuming with the plaintiffs that, as to each of them, personal service was essential to jurisdiction, it is plain that the action of that court was in violation of the state law, in fact against the prohibition of the state law.

That it is also within the denunciation of the Fourteenth Amendment is also settled. Eight decisions of the Supreme Court to that effect are cited in Pizer v. Hunt (Mass.), 148 N. E. 801, 804. Each of these cases

reached the federal court by the error, or law, route, under section 237, Judicial Code. [2] We take judicial cognizance of the laws of the state within which our territorial jurisdiction lies. What is due process in such a case as that confronting the state court in Crawford county is specifically pointed out in the state Code providing for service. The section of the state Constitution already cited (article 1, § 16) provides that in all courts "every person * * * shall have remedy by due course of law, and shall have justice administered without denial or delay."

[3] In our judgment, the question before us is largely controlled by the decision of the Supreme Court in Barney v. City of New York, 193 U. S. 431, 24 S. Ct. 502, 48 L. Ed. 737. In that case it was held that when the action objected to was had in violation of the provisions of the state law the case was not one for the cognizance of a federal court of first instance, no matter if such action contravened the provisions of the Fourteenth Amendment. This decision has been very carefully distinguished and narrowed by a subsequent consideration of the Supreme Court; we cite in that particular Home Telegraph & Telephone Co. v. Los Angeles, 227 U. S. 278, 294, 33 S. Ct. 312, 57 L. Ed. 510. But all of these discriminations relate to the dissimilarity of facts, and the authority of the Barney Case is undisturbed within its restricted field, in which we think the facts in this case lie.

Much emphasis is laid in argument upon the claim that the court rendering the judgment in question was the state of Ohio in effect, and that this case is within the purview of a class of cases of which that last cited is a type (227 U. S.); but the distinction is here which differentiates Barney v. New York, supra, from the case in 227 United States, and others of like character. In all cases, so far as we have been permitted to consider them, in which jurisdiction was maintained in a federal court of first instance, without requiring diversity of citizenship, the state, acting through one of its agencies, followed the course of its own legislation, exercising a discretion as to the interpretation and application of such legislation, and the criterion existed that it was the state acting within its own authority which was contravening the Fourteenth Amendment. Here this state agency acted contrary to state authority, assuming plaintiffs' contention as to necessity of service, and it is to be presumed, as the state legislation provides for an opportunity to present the question to the state court, that, when its error is shown to it, it would be corrected. If not, the power of the federal court to enforce the Fourteenth Amendment follows under section 237, should the highest court in the state act to uphold an abuse of that constitutional safeguard.

We noted in our earlier and briefer memorandum that, in each of the three cases first cited to support jurisdiction, stress was laid upon the fact that there existed a diversity of citizenship. These cases were Marshall v. Holmes, 141 U. S. 589, 12 S. Ct. 62, 35 L. Ed. 870; Simon v. Southern Railway, 236 U. S. 115, 35 S. Ct. 255, 59 L. Ed. 492; Wells-Fargo Co. v. Taylor, 254 U. S. 175, 41 S. Ct. 93, 65 L. Ed. 205. This is the situation in earlier decisions of the Supreme Court. Johnson v. Waters, 111 U. S. 640, 4 S. Ct. 619, 28 L. Ed. 547; Arrowsmith v. Gleason, 129 U. S. 86, 9 S. Ct. 237, 32 L. Ed. 630. In Marshall v. Holmes, supra, the court, on page 599 of 141 U. S. 589, 12 S. Ct. 62, 35 L. Ed. 870, takes pains to note, in commenting on Arrowsmith v. Gleason, that the parties to the action were citizens of different states. In Wells-Fargo Co. v. Taylor, supra, the court, in its opinion (page 179 of 254 U. S., 41 S. Ct. 93, 94), says: "The federal jurisdiction rests on diversity of citizenship."

Where the parties are residents of the same district, it seems that, when the contention can be made that the state agency violated the practice and Code inhibitions of the state in the act alleged to be contrary to both state and federal Constitutions, the aggrieved party is relegated, in the first instance, to his state court, if remedies are available there as comprehensive as in the federal court. Such are the facts here, assuming that the judgment was coram non judice. If the instant contention may be said to "arise" under the Constitution of the United States, just as plainly does it "arise" under that of the state, whose Code and practice offer remedies more opportune than, and just as effective as, any possible in the federal practice.

[4] It is sound policy, and one encouraged by the flavor of all federal adjudications, not to extend federal jurisdiction over matters equally cognizable by state tribunals unless the elements of that jurisdiction are so clearly present that the principle of comity has no place in the matter.

We feel that, if the Simon Case, 236 U. S. 115, 35 S. Ct. 255, 59 L. Ed. 492, and the Wells-Fargo Case, 254 U. S. 175, 41 S. Ct. 93, 65 L. Ed. 205, had been studied more

attentively, it would not have been said, as in a brief before us, that, if we are right here, the injunction in each, sustained by the Supreme Court, was "improvidently granted in that the plaintiffs in each of these cases must likewise have had a similar remedy at law," meaning, we assume, in the appropriate state court.

In the case before us there is a pure question of law,—nothing else, not even of the interpretation of a statute or constitutional section, or of the application of either. In the Simon Case, which had many adventures (208 U. S. 144, 28 S. Ct. 238, 52 L. Ed. 429; [C. C.] 184 F. 959; 195 F. 56, 115 C. C. A. 58; 236 U. S. 115, 35 S. Ct. 255, 59 L. Ed. 472) not only was there a question of fraud (see especially Mr. Justice Holmes' opinion in 208 U. S.), but of the constitutionality of a state statute, peculiarly a matter for the cognizance of federal courts. There was also diversity of citizenship, which Mr. Justice Lamar (opinion, 236 U. S. 121, 35 S. Ct. 255, 59 L. Ed. 492) takes pains to notice.

In the Wells-Fargo-Taylor Case, 254 U. S. 175, 41 S. Ct. 93, 65 L. Ed. 205, the plaintiff, against its application to be made a party, had been denied a hearing in the state court. 254 U. S. 178, 179. The case presented not only a question of fraud (pages 179 and 180), but also of the interpretation of the federal Employer's Liability Act of 1908, being Comp. St. §§ 8657–8665 (page 181). Again the court (by Mr. Justice Van Devanter) is careful to note diversity of citizenship as if it were a necessary element of jurisdiction.

Noting that the sections of the Ohio Code clearly afforded plaintiffs an opportunity, which may yet survive, to enter the original case by special appearance, to secure relief, a discrimination respecting jurisdiction is interesting, which was first noted by the Supreme Court in Barrow v. Hunton, 99 U. S. 80, 25 L. Ed. 407, effective to deny jurisdiction even where diversity of citizenship obtained. It is stated by the court in the following language:

"The question presented with regard to the jurisdiction of the Circuit Court is whether the proceeding to procure nullity of the former judgment in such a case as the present is or is not in its nature a separate suit, or whether it is a supplementary proceeding, so connected with the original suit as to form an incident to it, and substantially a continuation of it. If the proceeding is merely tantamount to the common-law practice of moving to set aside a judgment for irregularity, or to a writ of error, or to a bill of review or an appeal, it would belong to the latter category, and the United States court could not properly entertain jurisdiction of the case. Otherwise the Circuit Courts of the United States would become invested with power to control the proceedings in the state courts, or would have appellate jurisdiction over them in all cases where the parties are citizens of different states. Such a result would be totally inadmissible.

"On the other hand, if the proceedings are tantamount to a bill in equity to set aside a decree for fraud in the obtaining thereof, then they constitute an original and independent proceeding, and, according to the doctrine laid down in Gaines v. Fuentes, 92 U. S. 10 [23 L. Ed. 524], the case might be within the cognizance of the federal courts. The distinction between the two classes of cases may be somewhat nice, but it may be affirmed to exist. In the one class there would be a mere revision of errors and irregularities, or of the legality and correctness of the judgments and decrees of the state courts; and in the other class the investigation of a new case arising upon new facts, although having relation to the validity of an actual judgment or decree, or of the party's right to claim any benefit by reason thereof."

While the case cited is somewhat individual on its facts, yet evidently its course proceeded on principles applicable here. A money judgment was obtained in a state court without jurisdiction of defendant's person. Subsequently the alleged judgment debtor brought an action in the same state court to enjoin the execution for want of service or waiver, and a temporary writ seems to have issued. Thereupon the plaintiff in the original suit, defendant in the second, removed the case to the federal Circuit Court on the ground of his citizenship in another state. Then the case was revamped to be purely an action in equity. In the Circuit Court the decree was for the defendant, dissolving the state court's temporary writ and dismissing the bill. It was held in the Supreme Court that the Circuit Court had no jurisdiction, even if diversity of citizenship were present. The court said, in language applicable to the case before us:

"It would seem apparent that the proceeding in the present case was one that affected the mere regularity of the original judgment. In the common-law practice, it would have been a motion to set aside the

judgment for irregularity, or a writ of error coram vobis."

The court then proceeds to discuss the applicable Louisiana Code, providing a remedy analogous, not only to the common-law practice, but to that provided by the Ohio Code, already referred to.

It is quite plain that the only foundation for a claim that the judgment in the state court against complainants here lies in the view of the latter that their guaranty did not carry a waiver of service and consent to judgment. Obviously the first question before us, should we entertain this case, would be whether the terms of the guaranty carried the waiver. It must be assumed that the state court decided this purely legal question with the plaintiff before it. Any action we might take sustaining the complaint would have for its foundation a contrary opinion on this question (i. e., our decision would be merely a review of the action of the state court); and a finding that it committed an error of law, because of which, and for no other reason, we would grant equitable relief to parties who were competent at any time to present the same question to the actual and not constructive attention of the court committing the alleged error, and in the same case in which it intervened. This is the issue in Hunton v. Barrow, supra, over again.

We are satisfied that our previous action was right, and that we have no jurisdiction to consider this case for each reason formerly given, and that the motion for rehearing is not well taken.